IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| HOWARD CLARK, | ) | CASE NO. 1:16 CV 821 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Howard Lee Clark under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 12. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 8.

[4] ECF # 9.

[5] ECF # 5.

[6] ECF # 11.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

**Facts**

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Clark who was 51 years old at the time of the administrative hearing,[11] did not graduate high school, but has a GED.[12] He lives with his fiancé in an apartment.[13] His past relevant employment history includes work as a material handler and a injection molding machine tender.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Clark had the following severe impairments: osteoarthritis of the knee with left total knee

---

[7] ECF # 23 (Commissioner's brief); ECF # 18 (Clark's brief).

[8] ECF # 23-1 (Commissioner's charts); ECF # 18-1(Clark's charts).

[9] ECF # 17 (Clark's fact sheet).

[10] ECF # 25.

[11] ECF #17 at 1.

[12] *Id.*

[13] ECF # 9, Transcript ("Tr.") at 52, 239.

[14] *Id.* at 33.

arthroplasty; retained bullet fragments in the left leg; mood disorder; personality disorder, and substance abuse.[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Clark's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb any ladders, ropes or scaffolds; can occasionally climb ramps and stairs; can occasionally stoop, crouch, kneel, and crawl; and can frequently balance; avoid concentrated exposure to cold, humidity and all exposure to unprotected heights and dangerous moving machinery. As for mental limitations, the claimant has no limits in understanding, remembering, and carrying out instructions; can interact superficially with general public, co-workers, and supervisors frequently; superficial is defined as speaking, signaling to accept instructions, ask questions, serve, etc., but no higher more intense forms of interaction like negotiating, mentoring, etc.; is limited to work that is simple, routine in nature with infrequent changes; and can make simple work related decisions.[16]

Given that residual functional capacity, the ALJ found Clark incapable of performing his past relevant work as a material handler and injection molding machine tender.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Clark could perform.[18] The ALJ, therefore, found Clark not under a disability.

---

[15] *Id*. at 22.

[16] *Id.* at 26.

[17] *Id*. at 33.

[18] *Id*. at 33.

**B.    Issues on judicial review**

Clark asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Clark presents the following issues for judicial review:[19]

- Whether substantial evidence supports the residual functional capacity determined by the ALJ.

- Whether the ALJ erred in failing to determine that the plaintiff's conditions meets, or at least equal Listing 1.02A regarding a major dysfunction of a joint.

- Whether the ALJ erred in failing to perform a proper pain analysis.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

## Analysis

**A.    Legal Standards**

*1.    Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by

---

[19] ECF # 18 at 1.

this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## *2.  Pain as a cause of disability and credibility*

When a claimant presents pain as the cause of disability, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*[23] provides the proper analytical framework. The Court in *Duncan* established the following test:

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986).

[t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.[24]

Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain. Once the claimant has identified that condition, then under the second prong he or she must satisfy one of two alternative tests – either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur.[25]

Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.[26] The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of the condition by medical professionals.[27] Both alternative tests focus on the claimant's "alleged pain."[28] Although the cases are not always clear on this point, the standard requires the ALJ to assume arguendo pain of the severity alleged by the claimant and then determine

---

[24] *Duncan*, 801 F.2d at 853.

[25] *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).

[26] *Id.* at 1037 (quoting 20 C.F.R. 404.1529(c)(2)).

[27] *Walters v. Comm'r of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997).

[28] *Duncan*, 801 F.2d at 853.

if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry, however. As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[29] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

> Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[30]

The regulations also make the same point.

> We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work . . . solely because the available objective medical evidence does not substantiate your statements.[31]

---

[29] Social Security Ruling (SSR) 96-7p, Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 61 Fed. Reg. 34483 (July 2, 1996).

[30] *Id.* at 34484.

[31] 20 C.F.R. § 416.929(c)(2).

Under the analytical scheme created by the Social Security regulations for determining disability, objective medical evidence constitutes the best evidence for gauging a claimant's residual functional capacity and the work-related limitations dictated thereby.[32]

As a practical matter, in the assessment of credibility, the weight of the objective medical evidence remains an important consideration. The regulation expressly provides that "other evidence" of symptoms causing work-related limitations can be considered if "consistent with the objective medical evidence."[33] Where the objective medical evidence does not support a finding of disability, at least an informal presumption of "no disability" arises that must be overcome by such other evidence as the claimant might offer to support his claim.

The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[34]

The specific factors identified by the regulation as relevant to evaluating subjective complaints of pain are intended to uncover a degree of severity of the underlying impairment not susceptible to proof by objective medical evidence. When a claimant presents credible

---

[32] *Swain*, 297 F. Supp. 2d at 988-89.

[33] 20 C.F.R. § 404.1529(c)(3).

[34] 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

evidence of these factors, such proof may justify the imposition of work-related limitations beyond those dictated by the objective medical evidence.

The discretion afforded by the courts to the ALJ's evaluation of such evidence is extremely broad. The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess his subjective complaints.[35] A court may not disturb the ALJ's credibility determination absent compelling reason.[36]

If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[37] Unlike the requirement that the ALJ state good cause for discounting the opinion of a treating source, the regulation on evaluating a claimant's subjective complaints contains no express articulation requirement. The obligation that the ALJ state reasons for rejecting a claimant's complaints as less than credible appears to have its origin in case law.[38] The Social Security Administration has recognized the need for articulation of reasons for discounting a claimant's credibility in a policy interpretation ruling.

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be

---

[35] *Buxton*, 246 F.3d at 773.

[36] *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

[37] *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994).

[38] *Felisky*, 35 F.3d at 1036; *Auer v. Sec. of Health & Human Servs.*, 830 F.2d 594, 595 (6th Cir. 1987).

sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.[39]

The strong statement from the administrative ruling quoted above constitutes a clear directive to pay as much attention to giving reasons for discounting claimant credibility as must be given to reasons for not fully accepting the opinions of treating sources. An ALJ in a unified statement should express whether he or she accepts the claimant's allegations as credible and, if not, explain the finding in terms of the factors set forth in the regulation.[40] The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.[41] The articulation should not be conclusory;[42] it should be specific enough to permit the court to trace the path of the ALJ's reasoning.[43]

**B.     Application of standards**

This case, and the three issues raised by Clark, centers on the claimant's left knee, which was completely replaced in 2013. Essentially Clark asserts that weakness and atrophy in that knee qualifies as meeting Listing 1.02A.[44] He argues further that the RFC, which

---

[39] SSR 96-7p, 61 Fed. Reg. at 34484.

[40] 20 C.F.R. § 404.1529(c)(3).

[41] *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1054 (E.D. Wisc. 2005).

[42] SSR 96-7p, 61 Fed. Reg. at 34384.

[43] *Blom*, 363 F. Supp. 2d at 1054.

[44] ECF # 18 at 13-16.

found him capable of light work, is flawed in that he is only capable of sedentary work.[45] He further contends that the ALJ did not properly analyze his complaints of pain, noting especially that the ALJ did not address factors beyond the subjective complaints, such as the diagnosis of Dr. Jill Mushkat, who found psychological factors as well as medical conditions underlying the pain.[46]

### 1. *Listing 1.02A*

Listing 1.02A, addressing major dysfunction of a joint due to any cause, provides:

Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

In that regard, Listing 1.00B2b, which defines the inability to ambulate, states:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities....
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry

---

[45] *Id*. at 10-13.

[46] *Id*. at 16-17.

out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping or banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of an assistive device does not, in and of itself, constitute effective ambulation.

Here, the ALJ essentially concluded that Clark did not meet Listing 1.02A because, by the terms of Listing 1.00B2b, he could not show an inability ambulate.[47] In that regard, the ALJ observed that Clark has the ability to drive, shop, prepare meals, do laundry and perform self-care.[48] Although Clark contends that his ability to perform such daily activities should not be equated with an ability to work,[49] the Commissioner correctly notes that the ALJ made no such argument, but did find that these activities of daily living did demonstrate that Clark was able to carry out "routine ambulatory activities, such as shopping and banking" that are specified in Listing 1.00B2b.[50] It is Clark's unchallenged ability to perform these "routine ambulatory activities," not the ability to engage in full-time employment, that precludes Clark from meeting the listing.

---

[47] Tr. at 23.

[48] *Id*.

[49] ECF # 18 at 15.

[50] ECF # 23 at 8.

Accordingly, and for the reasons stated, substantial evidence supports the finding of the Commissioner that Clark does not meet Listing 1.02A.

**2.      RFC**

*a.      Consideration of left knee pain as to the RFC*

The central issue is the effect of Clark's 2013 knee replacement on his functional abilities.  As the Commissioner notes, the replacement surgery was in January 2013 and, as the ALJ found, by February 2013 the range of motion on that knee was normal, the incision was healing well, and he had no atrophy or tone abnormality.[51]  The ALJ further observed that there is no evidence in the record that Clark sought additional treatment for his knee after the surgery until December 2013 when he went to a new physician for treatment of leg and back pain.[52]  The ALJ also stated that "[m]edical notes from January 2014 indicate[] that [Clark's] muscle strength in the lower left extremity was 5/5, there was no numbness of tingling, and his neurological functions were intact. Additionally, examination notes from July 2014 indicate that [Clark's] muscle strength was equal in all four extremities."[53]

Related to these findings, the ALJ found that the bullet wound over the left tibia and fibula was confined to the soft tissue and did not destroy bone.[54]  She finally noted that "there is no evidence of further medical treatment or complaints of pain" arising specifically from

---

[51] *Id*. at 9 (citing record).

[52] Id. (citing record0.

[53] Tr. at 28 (citing record).

[54] *Id.*

the wound, and that any other issues in that regard generally resolve themselves on their own.[55]

A closer review of the post-operative notes of Dr. Daniel Callahan, M.D., made on January 9, 2014, indicate that Clark was complaining of pain in his left lower extremity into his hip and groin, and showing pain with palpation to the left knee and anterior thigh.[56] Dr. Callahan also documents that there was decreased range of motion with flesion.[57] But, and as the ALJ expressly observed, this report also there was no numbness or tingling in the left lower extremity, that neurological function was intact, and that muscle strength was five out of five.[58]

The notes from Dr. Callahan's physical examination in June 2014 disclose that Clark stated that his knee pain was "8/10" and that the pain is aggravated by "sitting, standing and walking."[59] Dr. Callahan prescribed a continuation of percoset and a series of left sacroiliac joint injections.[60] A follow-up visit with Dr. Callahan on July 24, 2014 records that Clark had "80 % pain relief" from the injections, although new back pain had started.[61] Clark

---

[55] *Id*.

[56] Tr. at 637.

[57] *Id*.

[58] *Id.*

[59] *Id.* at 742-43.

[60] *Id*. at 744.

[61] *Id*. at 782.

-14-

reported being able to walk only "short distances," and being unable to sleep at night because he could not find a comfortable position.[62] The care plan at that time included a cane, a back brace, additional injections, and a TENS unit.[63] At a ten day follow-up visit to the injections, dated July 31, 2014, the treatment notes show, as the ALJ mentioned, that muscle strength was "equal in all 4 extremities," there was a mass on the left medial lower leg, positive sacral spine tenderness to palpation and positive straight leg aggravation of back pain bilaterally.[64] The specific pain notation was that "[Clark] still has left sacroiliac pain and radicular pain."[65]

The treatment notes after the surgery consistently shows that Clark was complaining of pain, and that the pain was only partially alleviated by medication and injections. Indeed, the final treatment note from Dr. Callahan was even with the injections and pain medication Clark still has left sacroiliac pain as well as radicular pain. Moreover, Clark has consistently told Dr. Callahan that he was unable to walk more than short distances and that he needed to frequently change positions to seek some relief from the pain.

b.  *Pain analysis*

The above discussion of Clark's treatment since the knee replacement shows that it has consistently focused on pain relief. That said, however, it is also clear that the complained of pain has not been knee pain but back pain. As the ALJ points out, the

---

[62] *Id.*

[63] *Id*.

[64] *Id*. at 789.

[65] *Id*. at 790.

complaints of knee pain dating from 2012-2013 are not found in the record after the knee replacement in 2014.[66] Further, as the ALJ also observed, the pain complaints to Dr. Callahan, while consistent, were not followed up with any clinical diagnostic tests, such as x-rays.[67] In such a situation, the ALJ granted only little weight to Dr. Callahan's opinion as to Clark's limited ability to ambulate, and further found Clark to be less than fully credible.[68]

Clark maintains that the ALJ's analysis of his subjective complaints of pain was improper, noting that pain does not require objective evidence to support it.[69] The relevant standard in this regard was set out in my opinion in *Cross*[70] and essentially requires the ALJ to consider all the relevant evidence in light of the factors set forth in SSR 96-7p. The ALJ here expressly cited to SSR 96-7p in undertaking an analysis of Clark's complaints of pain.[71]

Here, the evidence is, as noted above, that Clark has been consistent in his complaints, and that he has utilized multiple methods for pain relief with only sporadic relief. It also shows, however, that these complaints have been of back pain, not knee pain. As such, and as the ALJ points out, an MRI of the lumbar spine in 2015 showed only mild degeneration,

---

[66] Tr. at 31.

[67] *Id*. at 32.

[68] *Id*.

[69] ECF # 18 at 16 (citing *Duncan v. Secy of HHS*, 801 F.2d 847, 853 (6th Cir. 1986)).

[70] *Cross v. Commissioner of Social Security*, 373 F.Supp.2d 724, 732-33 (N.D. Ohio 2005).

[71] Tr. at 27.

while there have been no diagnostic tests to support a finding of sacroiliitis.[72] Moreover, and as stated above, there is substantial evidence to support the finding that any impairment to Clark's left knee does not meet a Listing. Further, and in that regard, the treatment notes since the knee replacement surgery in 2014 clearly show that there is no loss of muscle strength nor any neurological deficits of the lower left extremity. In addition, as the ALJ also noted, Clark is able to drive, shop, prepare meals, do laundry and perform self-care.[73]

Finally, and as the ALJ also noted, Clark's testimony contains inconsistencies throughout the record, and as the ALJ expressly observed, even after the knee replacement "the claimant's specialist did not opine on work restrictions."[74]

Taken together, the ALJ has adequately performed an analysis of Clark's subjective complaints of pain under the appropriate rubric. Further, I find, for the reason stated, that substantial evidence supports the determination of the Commissioner that Clark's complaints of pain were not fully credible.

**Conclusion**

Accordingly, for the reasons stated, the decision of the Commissioner in this matter to deny benefits to Howard Lee Clark is hereby affirmed.

---

[72] *Id.* at 23. The ALJ did observe that a 2014 x-ray of the sacroiliac joint was done, but was performed only to provide needle guidance for the injection and not for diagnostic purposes.

[73] *Id.*

[74] *Id.* at 31.

-17-

IT IS SO ORDERED.

Dated: September 21, 2017                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge